OFFICE OF U.S. DISTRICT JUDGE
BRUCE S. JENKINS

Jay Barnes (9874)
Bradford D. Myler (7089)
Attorney for Plaintiff
1278 South 800 East
Orem, UT  84097
Telephone:    (801) 225-6925
Facsimile:    (801) 225-8417

FILED
U.S. DISTRICT COURT

2007 JUN -8  P 3: 36

DISTRICT OF UTAH

BY:_____.
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | | |
|---|---|---|
| KARRIE KEITH, | ) | **CIVIL ACTION NO.** |
| | ) | **2:06-cv-907** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE | ) | |
| CURRENT COMMISSIONER | ) | **ORDER** |
| OF THE SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant, | ) | |

On October 25, 2006, Plaintiff appealed the Commissioner's decision denying her

application for disability insurance benefits under the Social Security Act.  After the case

had been fully briefed, this court heard oral arguments on May 4, 2007.  Having now

fully heard the case, the court enters the following order remanding to the Commissioner

for further proceedings.

Plaintiff presented two issues for consideration.  (1) Whether the ALJ properly

considered the medical opinion evidence, including the evidence from Mrs. Keith's

treating physician, and (2)  whether the ALJ properly rejected the testimony of Mrs.

Keith. Because the court finds that a remand is appropriate under the first issue, the second issue is not considered in this order.

## FACTS

Plaintiff, Mrs. Keith, suffered an injury to her low back on June 4, 2001 while sorting clothing for her employer. She has not worked substantially since this injury. (T. 14). She was initially diagnosed with a lumbar strain and returned to modified work with an order for physical therapy. (T. 174). However, she continued to have pain and an MRI revealed that she had a broad based disc bulge at L4-5 with a free disc fragment causing central canal stenosis. (T. 185). Mrs. Keith then began seeing Dr. Alan Brown. Dr. Brown found that Mrs. Keith had a positive straight leg test and mild weakness in the right L3-4 muscle group and took her off work. (T. 226). Dr. Brown began treatment with medications and a series of epidural injections. However, these modalities did not bring significant pain relief.

At the recommendation of Dr. Brown, Mrs. Keith decided to undergo a surgical fusion at L4-5 and L5-S1, which was done on January 9, 2002. (T. 205). Post surgically Mrs. Keith continued to complain of a fair amount of pain. (T. 218). Following surgery Dr. Brown gave her an 18% whole person impairment rating using the Utah Labor Commissions guides. (T.215). Mrs. Keith continued to have severe pain so in January of 2004 Dr. Brown recommended a discogram to evaluate a possible failed fusion. (T. 288). The discogram, performed by Dr. Charles Bova on January 21, 2004, revealed no pain response at L2-3, the control disc, but positive severe pain response at L3-4 and L4-5. Mrs. Keith also had a pain response with entry into the intervertebral space. *Id.* Dr. Brown saw Mrs. Keith on January 27, 2004, and after reviewing the discogram,

concluded that she could not return to work. (T.287).  He also expressed approval of her

application for Social Security Disability. *Id.*  To support his conclusion that Mrs. Keith

should not work Dr. Brown provided a narrative statement discussing Mrs. Keith's

current medical condition and her resulting limitations. (T. 285).  Dr. Brown continued to

treat Mrs. Keith with other modalities including removal of the bone stimulator, (T. 338),

and increases in pain medication. (T. 336).

On July 29, 2004, Mrs. Sharon Marchant, P.T., evaluated Mrs. Keith's functional

capacity in a functional capacity examination. (T. 353-60).  Mrs. Marchant reported that

Plaintiff considered herself unable to meet the physical demands of sedentary work, but

that the results of her evaluation showed an ability to meet the demands of light work.

(T.360).  Mrs. Marchant found that Plaintiff demonstrated various inconsistencies

throughout during the evaluation and suggested symptom magnification. (T.360).  She

also concluded that Plaintiff could do more at times than she currently states or perceives.

*Id.*  On August 9, 2004, Mrs. Keith was evaluated by Dr. Richard Knoebel.  Dr. Knoebel

found that Mrs. Keith was hypersensitive over her left SI joint and surgical scar and had

decreased range of motion of her lumbar spine, she had normal reflexes, no muscle

spasms, and no muscle atrophy. (T. 367).  He also found her subjective complaints far out

weighed the objective findings in the face of the inconsistencies on physical examination

and numerous inappropriate responses to credibility testing. (T.365-67).  Dr. Knoebel

concluded that Mrs. Keith could lift 35lbs occasionally and 20lbs frequently, and

therefore could perform medium work. (T. 369).

Dr. Brown continued to treat Mrs. Keith through the end of 2004 and throughout

2005.  On December 13, 2005, Dr. Brown provided a statement of the specific limitations

resulting from Mrs. Keith's low back pain. (T. 323).  These limitations included most

significantly for the current case; walking a couple of blocks without rest, alternating

sitting and standing, unscheduled breaks at least once per hour, lifting no more than

10lbs, and missing work 3-4 times per month. *Id.*  Dr. Brown specifically noted that her

impairment is consistent with her symptoms and functional limitations. *Id.*

A hearing was held on February 14, 2006, in Salt Lake City Utah before an

Administrative Law Judge. (T. 12).  The ALJ issued a decision finding Mrs. Keith not

disabled on April 28, 2006.  At the hearing the ALJ received into evidence the opinions

of two vocational experts, one in a written report and the other as sworn testimony.  The

vocational expert called by the ALJ to testify at the hearing testified that Mrs. Keith

would not be able to sustain employment with her need for breaks or with her need for

absences. (T. 422).  The written report also stated that Mrs. Keith would not be able to

work if she needed unscheduled breaks or would miss more than 4 days of work each

month. (T. 142).

However, the ALJ found that Mrs. Keith statements concerning the severity of her

symptoms were not entirely credible (T.16) and therefore found that Mrs. Keith had the

residual functional capacity to perform a significant range of sedentary work with the

option to sit and stand at will, occasionally can climb ramps and stairs and balance, kneel

and crawl, do little if any stooping and crouching, and never climb ladders, ropes or

scaffold. (T. 15).  The ALJ did not include any limitations regarding the need for breaks

or absences, nor did the ALJ include a discussion of why those limitations were not

included in the residual functional capacity finding. Based upon the residual functional

capacity finding the ALJ did make, the ALJ concluded that other work was reasonable available to Mrs. Keith and therefore she was not disabled. (T.23-25).

## STANDARD FOR REVIEW

The court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Winfrey v Chatter* 92 F.3rd 1017, 1019 10th Circuit 1996.

## DISCUSSION

Mrs. Keith argues that the ALJ erred by failing to discuss the two critical limitations of needing extra breaks and missing work. The core of her argument rests on the ALJ's failure to discuss these limitations in any way in her decision. This argument is based on the fact the ALJ appears to have adopted the limitations as stated by her treating physician, Dr. Brown, but completely failed to discuss the limitations of needing extra breaks or absences as part of her limitations in the decision.

The law of the 10th Circuit requires that this court remand a case where the ALJ fails to provide specific legitimate reasons for rejecting the opinion of a treating source. *Watkins v Barnhart* 350 F. 3rd 1297, 1301 (10th Circuit 2003). In evaluating treating source opinions, the ALJ is required to follow a two step process. *Id.* The first step in the process is to decide if the treating physician should be given controlling weight. *Watkins,* 350 F.3rd 300. Social Security Ruling 96-2p establishes a two step sequential process for determining whether a treating physician's opinion should be given controlling weight. First, the ALJ must determine whether the treating physician opinion is well supported by acceptable clinical and laboratory diagnostic techniques. Second, the ALJ must confirm that the opinion is consistent with other substantial evidence in the record. *Id.*

Mrs. Keith's arguments here do not depend on an analysis of whether the ALJ properly decided whether Dr. Brown's opinion should be given controlling weight. Rather, her arguments focus on the second step of the process which requires that the ALJ weigh the various medical opinions according to several factors provided in the regulations at 20CFR Sec 404.1527. *Watkins* 350 F.3rd 1300. After considering these factors, the ALJ must provide good reason in the decision for the weight he gives the treating physician's opinion. If the ALJ fails to explain what weight is given to the testimony and the reasons for giving that weight, the reviewing court is required to remand the case because the court can not provide a meaningful review. *Id.*

In the present case the ALJ failed to evaluate the treating physician opinions as required by *Watkins*. This is a fairly narrow error on the part of the ALJ because it is a failure to evaluate only two of the limitations assessed by the treating physician. Those limitations are Mrs. Keith's need for extra breaks during a work day and her need for extra absences of at least 4 per month. Notably, the ALJ concluded that Mrs. Keith's symptoms and limitations could reasonably be produced by her medical conditions but that she was not found entirely credible. (T. 16). However, the ALJ failed to discuss why these two particular limitations were not acceptable even though she essentially adopted the remainder of Dr. Brown's opinion. The ALJ references the contradictory opinions of Dr. Knoebel and Ms. Marchant but obviously did not adopt them as they provided for functional abilities far in excess of those found by the ALJ. Thus, it is apparent that the ALJ did not correctly evaluate Dr. Brown's opinion regarding missing work and the need for extra absences was not accepted despite being uncontradicted. Under the weighing approach required by *Watkins* the ALJ should have provided an analysis of the weight

given to the various medical opinions as well as the reasons for rejecting the parts of Dr.

Brown's opinion she apparently did not accept.  Therefore, this case will be remanded to

allow the ALJ the opportunity to fully evaluate Dr. Brown's opinion, especially the two

limitations regarding missing work and Mrs. Keith's need for extra breaks.

## CONCLUSION

Based upon the foregoing the court concludes that the ALJ erred in failing to

properly evaluate Dr. Brown's opinion.  This case is therefore reversed and remanded to

the commissioner for further proceedings to allow the ALJ to fully evaluate Dr. Brown's

opinion.


DATED this 8ᵗʰ day of June 2007.

BY THE COURT,

Bruce Jenkins
United States District Judge